### KOSOLAPOV v. MANDELL et al.

Circuit Court of Appeals, Second Circuit.
January 9, 1928.

No. 124.

**1. Damages ☞78(6)—Whether sales contract constituted valid provision for liquidated damages equal to 10 per cent. of undelivered goods held dependent on facts.**

Where contract for sale and delivery of goods in Russia required buyer to deposit with seller approximately 10 per cent. of purchase price as security for faithful performance, and provided that for each lot of goods accepted under the contract one-tenth of deposit should be applied on purchase price, and that breach of contract would "cause the losing of the deposit by the buyer in favor of the seller and payment of a double amount of the deposit by the seller," *held*, that intent of contract was to give each party, in case of breach by other, damages of 10 per cent. of value of undelivered goods, and to return to buyer balance of deposit on seller's breach, and its validity, as providing for liquidated damages rather than for a penalty, depended on attendant facts.

**2. Damages ☞85—That sale contract provided penalties for breach would not excuse seller's refusal to return buyer's deposit.**

Even if provision of contract for sale and delivery of goods in Russia, providing for 10 per cent. damages in case of breach by either party, constituted a penalty, this would not excuse seller's breach of agreement to return buyer's deposit securing faithful performance by buyer, notwithstanding buyer in his complaint claimed damages in too large an amount.

**3. Sales ☞411—Buyer's allegation, that seller refused to repay storage charges as agreed in consideration of extension of delivery date, stated cause of action.**

Allegation of buyer's complaint that, at seller's request, buyer extended date for delivery of goods a reasonable time in consideration of seller's agreement to pay buyer the storage charges incurred by him by reason of delay in delivery, and that in pursuance to such agreement buyer advanced for storage expenses a specified sum, which seller refused to repay on demand, *held* to state a cause of action.

23 F.(2d)—38

**4. Limitation of actions ☞46(3)—"Reasonable time" for which contract, requiring deliveries within six weeks from January 29, 1919, was extended, could not be said to have expired before April 17.**

Where contract for sale and delivery of goods in Russia required completion of deliveries within six weeks from January 29, 1919, and by supplemental agreement time for deliveries was extended for a "reasonable time," *held* that, in absence of evidence, it could not be said that reasonable time expired before April 17, 1919, as respects running of six-year statute of limitation against buyer's cause of action for seller's breach.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Reasonable Time.]

**5. Limitation of actions ☞180(2)—Buyer's allegations respecting extension of time for deliveries held not to show that six-year limitation had barred his cause of action.**

Where sale contract required completion of deliveries in Russia within six weeks from January 29, 1919, and by supplemental contract time for deliveries was extended for a "reasonable time," and an extract from buyer's letter contained in bill of particulars recited that "on March 29 (April 11, our style) expires the two months period for delivery to me of all merchandise," and other portions of bill of particulars stated that deliveries were made to middle of April, 1919, and that payment was made on April 9 (April 22, our style), *held*, that breach of contract by seller was not shown to have occurred on said March 29, so as to show that six-year statute of limitations barred buyer's cause of action before April 17, 1925.

In Error to the District Court of the United States for the Southern District of New York.

Action by Michael Pavlovich Kosolapov against Kaufman Mandell and another. To review a judgment dismissing the complaint on the merits, and awarding judgment to defendants, plaintiff brings error. Reversed.

This is a suit upon a contract for the purchase and sale in Russia of various kinds of tools, lathes, files, drills, etc. The complaint as amended alleges that the plaintiff is an alien, and the defendants are citizens of the state of New York resident in New York City; that on or about January 29, 1919, plaintiff and defendants entered into a contract in Vladivostok, Russia, whereby defendants agreed to sell and deliver to plaintiff, within six weeks of the date thereof, the goods in question for the price of 3,080,000 rubles, or $308,000; that the plaintiff deposited with defendants the sum of $30,000 as security for performance by him, the contract providing that in the event of his breach defendants should retain the said deposit as damages, and that in the event of breach by the defendants they should pay as damages

to plaintiff double the amount of said deposit; that after execution of the contract plaintiff at defendants' request "extended the date of delivery of said merchandise a reasonable time" in consideration of defendants agreeing to pay to plaintiff the storage charges incurred by him by reason of delay in delivery; that "between the 29th day of January and June" defendants delivered merchandise of the agreed value of $93,861.24, on account of which plaintiff paid 900,000 rubles in addition to his $30,000 deposit; that defendants failed and refused to deliver the remainder of the merchandise, although more than a reasonable time for delivery had elapsed, and plaintiff was at all times ready, able, and willing to receive it, to the damage of the plaintiff in the sum of $60,000; that pursuant to the above-mentioned supplementary agreement plaintiff advanced for storage expenses on or about April 14, 1919, the sum of $4,200, and demanded payment thereof from defendants, which they refused to pay, to the additional damage of plaintiff in the sum of $4,200. Judgment was demanded in the sum of $64,200, with interest on the sum of $60,000 from May 15, 1919, and on $4,200 from April 14, 1919.

An English translation of the contract sued upon is attached to plaintiff's bill of particulars, and the paragraphs thereof which refer to the deposit read as follows:

"The purchase of the above-mentioned merchandise is subject to your paying me a deposit amounting to 30,000 gold dollars, the receipt of which I acknowledge in this letter. This deposit serves as security for your acceptance of the whole merchandise. * * *

"For each lot of goods accepted and O. K.'d by you, you have to make full settlement in stipulated currency, deducting proportionately 10 per cent. from the amounts of the deposit received. * * *

"The breach of stipulation of this sale will cause the losing of the deposit by the buyer in favor of the seller and payment of a double amount of the deposit by the seller."

The suit was started by service of summons on April 17, 1925, and the defendants (1) moved to dismiss the complaint on the ground that the action was barred by the six-year statute of limitations; and (2) that the complaint did not set forth a cause of action. The court granted the motion on the second ground, and stated that it was unnecessary to determine whether the statute of limitations was a valid ground for dismissal.

Henry Leon Slobodin, of New York City, for plaintiff in error.

Daniel Loewenthal, of New York City (Harry Meirowitz, of New York City, on the brief), for defendants in error.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). [1] The construction of the contract for which the defendants argued, and which was apparently adopted by the court, was that the contract provided for a penalty—the forfeiture by defendants of $60,000, whether the breach of their undertakings was total or partial, a failure to deliver any goods or a failure to deliver a last insignificant installment. This is not, we believe, the correct interpretation of the contract. The buyer was to deposit $30,000, approximately 10 per cent. of the contract price, as security for faithful performance by him. For each lot of goods accepted, he was to pay nine-tenths of the price with new money, and one-tenth from the money held by defendants as security. Consequently, if the buyer had received four-fifths of the goods, he would also have applied four-fifths of his deposit in payment. The amount of the penalty for the plaintiff's failure to perform his agreement would diminish proportionately with the seriousness of his default.

It is to be noted that the clause which provides for "the losing of the deposit by the buyer" does not specify a given sum. It means that he shall lose the amount of the deposit on hand when the breach occurs. Similarly, in the case of a breach by the sellers, they are to pay "a double amount of the deposit." We construe this as an agreement to return to the buyer the amount of his deposit then on hand and to pay him a like sum as damages for the sellers' breach. Such construction makes the penalty for each party the same, and provides for a return of the plaintiff's security in case of the defendants' breach—a matter regarding which the parties would be likely to provide, and which is not covered at all, if the contract is construed otherwise. The intent of the contract, as we read it, is to give each party, in case of breach by the other, damages of 10 per cent. of the value of the undelivered goods, and to provide for a return to the buyer of the deposit which the sellers held as security for his agreement to pay such damages.

If this be the true construction, it may well be doubted whether the agreement may not be a valid provision for liquidated damages. Suppose it could be proved that the goods in question were at the time scarce and irreplaceable in Vladivostok, so that, if the

sellers defaulted, it was impossible to ascertain at what price the buyer could fill his needs; or, conversely, suppose that there was no market for such goods at that time and place, and the buyer was apparently the only person who wished them. Can it be said that 10 per cent. might not be a fair estimate of the loss of either party, should the other default? Such provisions can seldom be characterized without a knowledge of the attendant facts.

[2] But, even if the provision for 10 per cent. damages were deemed a penalty, this would not excuse defendants' breach of their agreement to return plaintiff's deposit. The fact that he has claimed damages in too large an amount is immaterial. The complaint sufficiently alleges a cause of action for the return of the deposit, even though more skillful pleading might have charged that failure as a breach distinct from the failure to pay damages for nondelivery of the merchandise.

[3] Nor is there any defect in the complaint in stating a cause of action in respect to storage charges of $4,200. However unlikely it may appear that the buyer should incur storage charges because of the delay in delivery by the sellers, the facts are distinctly alleged that he did, and that the sellers for a valid consideration had agreed to pay them. The letter of March 6, 1919, in the bill of particulars, is not such an agreement; but we cannot say this is all the plaintiff's proof. Paragraph 4 of the bill of particulars alleges that the request to extend the time of delivery was made first a few days after the execution of the contract.

[4, 5] We come, then, to the question of the statute of limitations. The contract originally required completion of deliveries in six weeks from January 29, 1919. This would be March 12, old style, or, if we take judicial notice of the difference in calendars, March 25, our style. The complaint alleges an agreement to extend deliveries "a reasonable time." Certainly it cannot be said, without evidence, that a reasonable time expired before April 17, 1919. Defendants' argument rests solely on the fact that the bill of particulars contains an extract from a letter of March 16, 1919, in which plaintiff wrote: "On March 29 (April 11, our style) expires the two months period for delivery to me of all merchandise." Why extracts from letters are reproduced in the bill of particulars, or what allegations of the complaint they sought to elucidate, does not appear from the record. Other portions of the bill of particulars state that "deliveries under the agreement were made to the middle of April, 1919," and that a payment of 100,000 rubles was made on April 9, which would be April 22, our style. The complaint alleged an agreement extending deliveries "a reasonable time" and the making and acceptance of deliveries till April 9 (April 22, our style), and by amendment until June.

Under these circumstances there is no warrant for the contention that the complaint is so limited by the bill of particulars as to show a breach by the defendants on March 29. It does not appear from the pleadings that the six-year statute of limitations had run before April 17, 1925. Therefore the judgment must be, and is, reversed.